UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| CHADRICK E. FULKS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 2:19-cv-00501-JPH-MJD |
| ) | |
| WATSON, et al. ) | |
| ) | |
| Defendants. ) | |

**Order Screening Amended Complaint, Dismissing Insufficient Claims, and Directing Service of Process**

Plaintiff Chadrick Fulks is an inmate at the United States Penitentiary in Terre Haute, Indiana. Because Mr. Fulks is a "prisoner," the Court must screen his amended complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

The Court must dismiss the amended complaint, or any portion of the amended complaint, if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The standard to determine whether the amended complaint states a claim is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (internal quotation omitted).

1

## II. The Amended Complaint

Mr. Fulks' amended complaint names six defendants: (1) T.J. Watson, (2) Dr. William Wilson, (3) Mr. Sherman, Lt. (4) Michelle Smith, nurse, (5) Mr. A. Johnson, officer, and (6) Mr. Hammon, officer.

The Court had previously allowed First and Eighth Amendment claims to proceed against Dr. Wilson and Lt. Sherman. Dkt. 14. The Court dismissed claims against T.J. Watson, an unidentified nurse, and an unidentified correctional officer. *Id.*

Mr. Fulks' amended complaint describes the same incident of sexual assault and resulting retaliation but in much more detail than his original complaint. Mr. Fulks is on death row and lives in the Special Confinement Unit (SCU). He alleges that in September 2018, Dr. Wilson requested to see Mr. Fulks alone in his office after normal hours in order to perform a full physical. Under prison policy, the escorting officer should have remained in the examination room with Mr. Fulks. Mr. Fulks states Dr. Wilson was upset about complaints Mr. Fulks' capital defense attorneys had filed regarding his medical care. Mr. Fulks alleges that Dr. Wilson told Mr. Fulks that he was giving him a complete physical due to the attorneys' allegations of neglect of medical care. Mr. Fulks alleges that Dr. Wilson gave Mr. Fulks a pill that incapacitated him and proceeded to sexually assault Mr. Fulks. At one point, Dr. Wilson wiped his hands with three paper towels, which Mr. Fulks took to preserve as evidence of the assault.

After the incident, Officer Hammon escorted Mr. Fulks back to his cell. Mr. Fulks asked to speak with the shift lieutenant, but Officer Hammon denied the request. Officer Hammon learned about the paper towels and, on Dr. Wilson's orders, retrieved two of them from Mr. Fulks, who hid the third towel. Mr. Fulks noticed he was bleeding from his rectum and asked to see a nurse the following morning, but this request was also denied.

Mr. Fulks reported the incident to investigator Lt. Sherman and Nurse Smith. He requested medical treatment, a sexual assault examination, a drug test to see what drug Dr. Wilson gave him, and a polygraph because Lt. Sherman and Nurse Smith accused him of lying. They denied his requests. When Lt. Sherman learned about the paper towel with Dr. Wilson's DNA on it, he ordered Mr. Fulks' cell searched, and Officer Hammon confiscated the remaining paper towel.

Mr. Fulks alleges that after he attempted to report the incident, the defendants retaliated against him in various ways:

- Dr. Wilson discontinued medication and stopped providing Mr. Fulks with treatment for his chronic spinal injury and pain.

- Lt. Sherman ordered improper searches of Mr. Fulks' cell for the sole purpose of confiscating evidence of Dr. Wilson's crime and refused to do a proper investigation pursuant to the Prison Rape Elimination Act (PREA).

- Officer Hammon retrieved the paper towels from Mr. Fulks' cell. He told him that if he stopped filing complaints about the incident with Dr. Wilson, everything would return to normal. Sometime in October 2018, when Mr. Fulks persisted in filing complaints, Officer Hammon took Mr. Fulks to an area with no surveillance cameras and pushed Mr. Fulks down a flight of stairs while he was handcuffed, resulting in injuries. Officer Hammon fired Mr. Fulks from his orderly job.

- Nurse Smith threw away his medication request forms, would not provide Mr. Fulks with his medication and then say she did, and failed to follow PREA protocol, resulting in a cover-up of the incident. She also refused to provide Mr. Fulks with medical care after Officer Hammon pushed him down the stairs in an effort to protect Officer Hammon so there would be no record of the incident

    (despite Mr. Fulks telling her, on account of a threat by Officer Hammon, that he sustained the injuries from a fall in his cell).

- Officer Johnson, the officer-in-charge of the SCU, threatened Mr. Fulks to stop filing complaints regarding Dr. Wilson's assault and Officer Hammon. When Mr. Fulks persisted, Officer Johnson conducted improper searches of his cell where he confiscated legal materials. Officer Johnson told other inmates that Mr. Fulks was snitching on them, causing the inmates to want to harm Mr. Fulks. Officer Johnson orchestrated an attack where he allowed a fellow death row inmate to leave his cell and attack Mr. Fulks. Another officer protected Mr. Fulks from the inmate but in doing so injured Mr. Fulks' hand and wrist.

- Mr. Fulks advised Warden Watson during the warden's weekly visits to the SCU that he had been sexually assaulted by Dr. Wilson, that there was no proper investigation, and that he was being denied access to a sexual assault hotline. Subsequently, Warden Watson denied Mr. Fulks visits with his attorneys and spiritual advisor, Rev. Bill Breedon. Warden Watson ordered a search of a borrowed car that Rev. Breedon was driving, and as a result of the search, banned Rev. Breedon from Terre Haute for at least a year.

Mr. Fulks alleges that he has been denied medical care both related to the sexual assault (i.e. immediate care for his physical injuries and subsequent care for his psychological distress) and his chronic back issues.

Mr. Fulks seeks damages and injunctive relief.

### III. Analysis

Mr. Fulks' claims are brought pursuant to the theory recognized in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). *Bivens* "authorizes the filing of constitutional tort suits against federal officers in much the same way that 42 U.S.C. § 1983 authorizes such suits against state officers . . . ." *King v. Federal Bureau of Prisons*, 415 F.3d 634, 636 (7th Cir. 2005).

The following claims **shall proceed** against the defendants. First Amendment retaliation and Eighth Amendment claims **shall proceed** against all defendants as submitted.[1] A Religious Freedom and Restoration Act (RFRA) claim **shall proceed** against Warden Watson.

Any claim under the Fourth Amendment **is dismissed**. A convicted prisoner, while in prison, has "no reasonable expectation of privacy in his prison cell that would protect him under the Fourth Amendment from unreasonable searches and seizures of his property." *King v. McCarty*, 781 F.3d 889, 899 (7th Cir. 2015) (citing *Hudson v. Palmer*, 468 U.S. 517 (1984)). However, the lack of claim under "the Fourth Amendment does not mean that he is without a remedy for calculated harassment unrelated to prison needs. Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity. The Eighth Amendment always stands as a protection against 'cruel and unusual punishment.'" *Hudson*, 468 U.S. at 529). Thus, to the extent Mr. Fulks alleges that the searches of his cell and confiscation of personal materials were for the purposes of harassment, those claims shall proceed under the Eighth Amendment and as part of his First Amendment retaliation claim.

---

[1] Mr. Fulks' complaint runs 41 pages. The Court has summarized Mr. Fulks' allegations, but to the extent that a particular incident has been omitted or described in more general terms, this does not indicate the Court is dismissing it from the complaint.

Any claim under the Fourteenth Amendment is **dismissed**. Mr. Fulks mentions the Fourteenth Amendment but raises no allegations under the Fourteenth Amendment, and the Court identifies none.

### IV. Request for Preliminary Injunction within Complaint

On page 10 of Mr. Fulks' amended complaint, he requests that the Court issue injunctive relief ordering Dr. Wilson to schedule Mr. Fulks' back surgery, arrange for him to see a counselor, cease retaliation, go under "probationary status for the medical dept.," and review medical records and care for all death row inmates.

"A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. Centimark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). "To survive the threshold phase, a party seeking a preliminary injunction must satisfy three requirements." *Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 966 (7th Cir. 2018) (internal quotations omitted)). It must show that: (1) "absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims"; (2) "traditional legal remedies would be inadequate"; and (3) "its claim has some likelihood of succeeding on the merits." *Id.* Only if the moving party meets these threshold requirements does the court then proceed to the balancing phase of the analysis. *Id*. In the balancing phase, "the court weighs the irreparable harm that the moving party would endure without the protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief." *Id*.

Mr. Fulks' motion simply does not provide enough information to allow the Court to determine whether any of the factors supporting injunctive relief have been met. If Mr. Fulks'

wishes to pursue a preliminary injunction against Dr. Wilson, he shall file a separate motion for preliminary injunction addressing the requirements discussed above.

## V. Service of Process and Further Proceedings

The clerk **is designated** pursuant to Fed. R. Civ. P. 4(c) to issue process to defendants Warden T.J. Watson, Nurse Michelle Smith, Officer A. Johnson, and Officer Hammon. The Marshal for this District or his Deputy shall serve the summons, together with a copy of the amended complaint, dkt. [40], exhibits, dkt. [40-1], motion for preliminary injunction, dkt. [39], and a copy of this Order, at the expense of the United States.

The **clerk is directed** to add Warden T.J. Watson, Nurse Michelle Smith, Officer A. Johnson, and Officer Hammon as parties in this action.

Defendants Sherman and Wilson have **through July 31, 2020**, to file their answer to the amended complaint pursuant to the Court's previous order, dkt. 43. Because the motion for preliminary injunction, dkt. [39], does not relate to Mr. Fulks' complaints against defendants Sherman and Wilson, defendant Watson shall respond to the motion for preliminary injunction when he files his answer to the amended complaint.

**SO ORDERED.**

Date: 7/10/2020

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

CHADRICK E. FULKS
16617-074
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Gina M. Shields
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
Gina.Shields@usdoj.gov

United States Marshal
46 East Ohio Street
179 U.S. Courthouse
Indianapolis, IN 46204