UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

CHADRICK E. FULKS,                    )
                                      )
                    Plaintiff,        )
                                      )
              v.                      )          No. 2:19-cv-00501-JPH-MJD
                                      )
T.J. WATSON Warden, et al.,           )
                                      )
                    Defendants.       )


**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS, GRANTING IN
PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Chadrick Fulks, a federal death row inmate confined at the United States
Penitentiary in Terre Haute, Indiana ("USP Terre Haute"), brings this action against the defendants
alleging violations of his First and Eighth Amendment rights after he was allegedly sexually
assaulted by a doctor at the prison. He seeks damages pursuant to *Bivens v. Six Unknown Narcotics
Agents*, 403 U.S. 388 (1971), and injunctive relief. On July 31, 2020, defendants Dr. William
Wilson and Lt. Sherman filed a motion to dismiss Mr. Fulks's *Bivens* claim under Federal Rule of
Civil Procedure 12(b)(6), or, in the alternative, for summary judgment based on failure to exhaust
administrative remedies. Dkt. 48. On February 24, 2021, the remaining defendants—Warden T.J.
Watson, Nurse Smith, Officer Johnson, and Officer Hammon—filed a notice of joinder in the
motion. Dkt. 85. For the reasons discussed in this Order, the defendants' motion is granted in part
and denied in part.

1

## II. Factual and Procedural Background

Mr. Fulks resides in the Special Confinement Unit ("SCU") at USP Terre Haute. Dkt. 48-1 at ¶¶ 3–4. In his amended complaint, dkt. 40, Mr. Fulks alleges the following facts:

After Mr. Fulks's capital defense attorneys filed complaints about his medical care, Dr. William Wilson, the medical director at USP Terre Haute, drugged Mr. Fulks and then sexually assaulted him while he was incapacitated. At one point, Dr. Wilson wiped his hands with three paper towels, which Mr. Fulks took to preserve as evidence of the assault.

After the incident, Officer Hammon escorted Mr. Fulks back to his cell. Officer Hammon learned about the paper towels and, on Dr. Wilson's orders, retrieved two of them from Mr. Fulks, who hid the third towel. Mr. Fulks noticed he was bleeding from his rectum and asked to see a nurse the following morning, but this request was denied.

Mr. Fulks reported the incident to investigator Lt. Sherman and Nurse Smith. He requested medical treatment, a sexual assault examination, a drug test to see what drug Dr. Wilson gave him, and a polygraph because Lt. Sherman and Nurse Smith accused him of lying. They denied his requests. When Lt. Sherman learned about the paper towel with Dr. Wilson's DNA on it, he ordered Mr. Fulks's cell searched, and Officer Hammon confiscated the remaining paper towel.

Mr. Fulks alleges that after he attempted to report the incident, the defendants retaliated against him in various ways:

- Dr. Wilson discontinued medication and stopped providing Mr. Fulks with treatment for his chronic spinal injury and pain.

- Lt. Sherman ordered improper searches of Mr. Fulks's cell for the sole purpose of confiscating evidence of Dr. Wilson's crime and refused to do a proper investigation pursuant to the Prison Rape Elimination Act ("PREA").

- Officer Hammon retrieved the paper towels from Mr. Fulks's cell. He told him that if he stopped filing complaints about the incident with Dr. Wilson, everything would return to normal. Sometime in October 2018, when Mr. Fulks persisted in filing complaints, Officer Hammon took Mr. Fulks to an area with no surveillance cameras and pushed Mr. Fulks down a flight of stairs while he was handcuffed, resulting in injuries. Officer Hammon also fired Mr. Fulks from his orderly job.

- Nurse Smith threw away his medication request forms, deprived Mr. Fulks of his medication and then lied about it, and failed to follow PREA protocol, resulting in a cover-up of the incident. She also refused to provide Mr. Fulks with medical care after Officer Hammon pushed him down the stairs in an effort to protect Officer Hammon.

- Officer Johnson, the officer-in-charge of the SCU, threatened Mr. Fulks to stop filing complaints regarding Dr. Wilson's assault and Officer Hammon. When Mr. Fulks persisted, Officer Johnson conducted improper searches of his cell where he confiscated legal materials. Officer Johnson told other inmates that Mr. Fulks was snitching on them, causing the inmates to want to harm Mr. Fulks. Officer Johnson orchestrated an attack where he allowed a fellow death row inmate to leave his cell and attack and injure Mr. Fulks. Warden Watson was aware of threats by certain inmates but did nothing to protect the attack.

- Mr. Fulks advised Warden Watson about the assault, improper investigation, and denial of access to a sexual assault hotline, and Warden Watson in turn denied Mr. Fulks visits with his attorneys and spiritual advisor.

3

Mr. Fulks alleged that he has been denied medical care both related to the sexual assault (i.e. immediate care for his physical injuries and subsequent care for his psychological distress) and his chronic back issues.

In its screening order, the Court permitted First Amendment retaliation and Eighth Amendment claims against all defendants and a Religious Freedom and Restoration Act against Warden Watson. Dkt. 44 at 5.

Defendants Wilson and Sherman filed the instant motion on July 31, 2020. Dkt. 48. In part, they argue that Mr. Fulks's First Amendment retaliation and Eighth Amendment conditions-of-confinement claims present new *Bivens* contexts, and "special factors" counsel against expanding *Bivens* to those claims, relying on *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017). They further argue that Mr. Fulks's amended complaint does not contain sufficient allegations against Lt. Sherman to state a constitutional violation and that Mr. Fulks has failed to exhaust his administrative remedies for any of the claims except for the Eighth Amendment claims against Dr. Wilson for the alleged assault and failure to treat Mr. Fulks's chronic back issues. Thus, the defendants seek dismissal and/or summary judgment on all claims except those claims against Dr. Wilson. Dkt. 49 at 2, n.1.

In light of the complexity of the *Abbasi* claim, the Court recruited counsel to file a response. Dkt. 52. Mr. Fulks filed his response on February 19, 2021. Dkt. 82. The remaining defendants filed their notice of joinder and brief in support on February 24, 2021. Dkt. 85. In the notice of joinder, defendants Warden Watson, Nurse Smith, Officer Johnson, and Officer Hammon ("Additional Defendants") allege that Mr. Fulks failed to exhaust any claims against the Additional Defendants and failed to state a claim upon which relief can be granted. Dkt. 85. The Additional Defendants seek dismissal of all claims against them.

Mr. Fulks filed a response on March 17, 2021, dkt. 88, and the defendants filed a reply on March 19, 2021, dkt. 89. The motion is now ripe for ruling.

### III. Motion to Dismiss for Failure to State a Claim

#### A. Standard on a Rule 12(b)(6) Motion

To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in the plaintiff's favor. *See Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018).

#### B. *Bivens* and *Abbasi*

Congress has provided that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. But jurisdiction does not necessarily create the authority to award damages. *Schweiker v. Chilicky*, 487 U.S. 412, 414 (1988). Although Congress has authorized district courts to award damages against state officials who violate the Constitution while acting under color of state law, *see* 42 U.S.C. § 1983, Congress has not provided an analogous authority to award damages against federal officials who violate the Constitution while acting under color of federal law. *See Abbasi*, 137 S. Ct. at 1854.

In *Bivens*, the Supreme Court held that district courts have the implied authority to award damages against federal officials for unreasonable searches and seizures in violation of the Fourth Amendment. 403 U.S. at 397. In *Davis v. Passman*, the Court extended this implied authority to actions alleging gender discrimination in federal employment in violation of the Fifth Amendment.

442 U.S. 228, 249 (1979). And in *Carlson v. Green*, the Court again extended this implied authority to actions alleging deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment. 446 U.S. 14, 24 (1980).

In *Abbasi*, the Supreme Court noted that those "three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." 137 S. Ct. 1843 at 1855. And in the forty years since *Carlson*, the Court has declined to create any new contexts for *Bivens* claims. *Id.* at 1857 (listing cases); *see also Hernandez v. Mesa,* 140 S. Ct. 735 (2020) (no implied damages remedy in action against border patrol agent for cross-border shooting). In each of these cases, the Court reasoned there were "special factors counselling hesitation" about creating a new *Bivens* context and that alternative remedies were available to address the category of injury alleged by the plaintiffs. *Abbasi*, 137 S. Ct. at 1853–54. Expanding *Bivens* to a new context is now a "disfavored judicial activity." *Id.* at 1857.

To determine whether a *Bivens* remedy is available to Mr. Fulks for his constitutional claims against the defendants, the Court first asks whether each claim presents a new *Bivens* context. *Id.* at 1859. If it does, the Court then inquires whether there are any special factors that counsel hesitation about granting the extension. *Hernandez,* 140 S. Ct. at 743.

### C. Whether Fulks's First Amendment Retaliation and Eighth Amendment Conditions-of-Confinement Claims Present a New *Bivens* Context

The Court first must decide whether Mr. Fulks's First Amendment retaliation and Eighth Amendment conditions-of-confinement claims arise in a new *Bivens* context. "A claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. The question is whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the

Supreme Court]." *Abbasi*, 137 S. Ct. at 1864. As the Supreme Court explained, "[D]ifferences that are meaningful enough to make a given context a new one" may include, but are not limited to,

> the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 1860.

The Supreme Court's "understanding of a 'new context' is broad[,]" *Hernandez*, 140 S. Ct. at 743, and recognizes that "even a modest extension is still an extension." *Abbasi*, 137 S. Ct. at 1864.

### i.    First Amendment Retaliation

Mr. Fulks argues that his First Amendment retaliation claims do not present a new context. He relies on *Hartman v. Moore*, 547 U.S. 250 (2006), in which the Court stated, "[W]e have held that retaliation is subject to recovery as the but-for cause of official action offending the Constitution. When the vengeful officer is federal, he is subject to an action for damages on the authority of *Bivens*." *Id.* at 256 (internal citations and quotations omitted). But *Hartman* was not one of the three cases the Court cited in *Abbasi* as recognizing an implied right of action for damages under *Bivens*, and the Supreme Court has never recognized a *Bivens* remedy for First Amendment claims. *See Wood v. Moss*, 572 U.S. 744, 757 (2014) (acknowledging that the Supreme Court has never recognized an implied damages remedy under the First Amendment); *Reichle v. Howards*, 566 U.S. 658, n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."). Mr. Fulks's First Amendment retaliation claim "[differs] in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137 S. Ct. at 1864. Accordingly, Mr. Fulks's First Amendment retaliation claims present a new *Bivens* context. *See*

*Bistrian v. Levi*, 912 F.3d 79, 95 (3d Cir. 2018) (recognizing that pretrial detainee's First Amendment retaliation claim presented new context); *Johnson v. Burden*, 781 Fed. App'x 833 (11th Cir. 2019) (recognizing that BOP employee's First Amendment retaliation claim presented new *Bivens* context and remanding to district court to conduct special factors analysis in light of *Abbasi*).

### ii.   Eighth Amendment Conditions-of-Confinement

The Court next considers whether Mr. Fulks's conditions-of-confinement claims present a new *Bivens* context. To be clear, the defendants do not allege that Mr. Fulks's Eighth Amendment claims regarding (1) the alleged sexual assault, (2) Dr. Wilson's treatment of Mr. Fulks's chronic back issue, or (3) the denial of medical or psychological treatment after the assault arise in a new *Bivens* context. Rather, they explain that "[b]y 'conditions-of-confinement claims,' Defendants mean Fulks's claims that, after the alleged assault, Defendants failed to properly investigate his allegations, confiscated paper towels, failed to follow PREA protocols, intimidated or threatened him, refused him a polygraph, drug test, and sexual assault exam, and otherwise covered up the assault." Dkt. 86 at 2, n.2.

However, it is necessary to parse out Mr. Fulks's conditions-of-confinement claims even further. One set of claims surrounds the defendants' efforts to cover up the alleged assault by refusing to investigate (including failing to follow PREA protocol) and conducting searches of Mr. Fulks's cell both to confiscate evidence and to harass Mr. Fulks (hereinafter "conspiracy claim"). Another claim is that Officer Hammon used excessive force against Mr. Fulks by pushing him down a staircase while Mr. Fulks was handcuffed. And a final potential Eighth Amendment claim is that Officer Johnson informed other inmates that Mr. Fulks was a snitch, and he and other defendants subsequently failed to protect him from an attack by one of the inmates.

Mr. Fulks's conspiracy claim presents a new *Bivens* context because it "[differs] in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137 S. Ct. at 1864. Specifically, it bears little resemblance to the medical claim in *Carlson. See also Robinson v. Sauls*, --- F. Supp. 3d ---, 2021 WL 716733, at *15 (N.D. Ga. Feb. 24, 2021) (noting that although the Eleventh Circuit recognized the existence of a *Bivens* conspiracy claim pre-*Abbasi*, if tasked with answering the question post-*Abbasi* it would decline to find such a claim existed); *Brunson v. Nichols*, No. 1:14-cv-2467, 2018 WL 7286410, at *3 (W.D. La. Dec. 7, 2018) (finding that prisoner's retaliation and conspiracy claims related to his filing of a grievance and subsequent disciplinary write-up presented a new *Bivens* context); *Williams v. Verna*, No. 1:16-cv-00764-AWI-SAB (PC), 2018 WL 5777365, at *6 (E.D. Cal. Oct. 31, 2018) (finding Eighth Amendment claim based on allegations that officers retained prisoner in a holding cell and denied his request to use the bathroom to compel him to tell officers who possessed drugs presented new *Bivens* context); *Shorter v. United States*, No. 19-16627 (RMB-KMW), 2020 WL 4188455, at *4 (D. NJ. July 21, 2020) (unpublished) (noting court's previous finding that plaintiff's claims under the Fifth Amendment for failure to investigate a sexual assault allegation in prison presented new *Bivens* context).

After *Abbasi*, courts have split on whether failure-to-protect and excessive force claims present a new *Bivens* context. The Court does not decide today whether Mr. Fulks's excessive force and failure-to-protect claims present a new *Bivens* context for two reasons. First, it is not clear from the government's briefing whether it argues that the excessive force and failure-to-protect are indeed new *Bivens* contexts or whether those claims are merely unexhausted. *See* dkt. 86 at 2, n.2 (describing conditions claims as including allegations the defendants "intimidated or threatened" Mr. Fulks, but not mentioning actions that resulted in physical injury); *id.* at 13 (listing stair

incident and inmate attack incident as claims that are unexhausted). Second, if the Court finds that these claims are unexhausted it will not have to decide whether a *Bivens* remedy applies to them.

### D.  Special Factors

Because the Court has determined that the First Amendment retaliation and Eighth Amendment conspiracy claims arise in a new context, it next must consider special factors. While the Supreme Court has not created a definitive list of "special factors counselling hesitation," separation-of-powers principles are "central to the analysis." *Abbasi* 137 S. Ct. at 1857. "The question is 'who should decide' whether to provide a damages remedy, Congress or the courts?" *Id.* A *Bivens* remedy should not be inferred if "there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Id.* at 1858. Amongst the considerations is whether there are alternative remedies available to the plaintiff, because that existing remedy "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* In other words, "when alternative methods or relief are available, a *Bivens* remedy usually is not." *Abbasi*, 137 S. Ct. at 1863 (citations omitted).

Mr. Fulks has alternative remedies available to him. The BOP's administrative remedy procedure is an alternative process that "provides yet another means through which allegedly unconstitutional actions and policies can be brought to the attention of the BOP and prevented from recurring." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001); *see also Goree v. Serio*, 735 Fed. App'x 894, 895 (7th Cir. 2018) (unpublished) (recognizing BOP administrative remedies as an alternative remedy); *Mack v. Yost*, 968 F.3d 311, 321 (3d Cir. 2020) (finding that the BOP administrative remedy process and availability of injunctive relief provided alternative remedy processes counseling against expansion of *Bivens* to First Amendment retaliation claims).

Also, "legislative action suggesting that Congress does  not want a damages remedy is itself

a factor counseling hesitation." *Abbasi*, 137 S. Ct. at 1865. In passing the Prison Litigation Reform Act of 1995 (the "PLRA"), Congress "placed a series of controls on prisoner suits . . . designed to prevent sportive filings in federal court." *Skinner v. Switzer*, 562 U.S. 521, 535–36 (2011). Congress did so with the intent to "reduce the quantity of inmate suits." *Jones v. Bock*, 549 U.S. 199, 223 (2007). Significantly, the PLRA does not provide for a standalone damages remedy against individuals, suggesting that "Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Abbasi*, 137 S. Ct. at 1865.

With respect to Mr. Fulks's claims surrounding the investigation of his alleged sexual assault, it is notable that when Congress enacted PREA, it had the opportunity to create a privately-enforceable damages remedy against federal officials for claims relating to prison rape but declined to do so. *See Shorter*, 2020 WL 4188455, at *5; *Dudley*, 2020 WL 532338, at *7; *see also Krieg v. Steele*, 599 Fed. App'x 231, 232–33 (5th Cir. 2015) (unpublished) (collecting cases holding that PREA does not establish a private cause of action for allegations of prison rape).

Whether *Bivens* extends to First Amendment retaliation claims remained unsettled in the Seventh Circuit. *Haas v. Noordeloos*, 792 Fed. App'x 405, 406 (7th Cir. Feb. 6, 2020). Also, the Third and Fourth Circuits have declined to extend *Bivens* to First Amendment retaliation claims in cases involving federal prisoners. *Earle v. Shreves*, --- F. 3d ---, 2021 WL 896399 at *4 (4th Cir. Mar. 10, 2021); *Bistrian*, 912 F.3d at 96. Both courts recognized that in prison allegations of retaliation are easy to make but difficult to prove. *Earle v. Shreves*, --- F. 3d ---, 2021 WL 896399 at *4 (4th Cir. Mar. 10, 2021) ("Given the ease with which an inmate could manufacture a claim of retaliatory detention, allowing a *Bivens* action for such claims could lead to an intolerable level of judicial intrusion into an issue best left to correctional experts."); *Bistrian*, 912 F.3d at 96 (noting that retaliation claims are easily fabricated and permitting them to proceed would result in

unwarranted judicial interference with prison administrative decisions). Their reasoning is persuasive. Generally, courts should decline to interfere with "the problems that arise in the day-to-day operation of a corrections facility." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Consistent with previous decisions from this Court,[1] the Court finds that special factors counsel against applying *Bivens* to First Amendment retaliation claims.

For similar reasons, the Court finds that special factors counsel against extending *Bivens* to Mr. Fulks's conspiracy claims, i.e. those claims that allege that the defendants conspired to thwart the investigation of Mr. Fulks's sexual assault by intimidating him with numerous cell searches, confiscating evidence, threatening him, and failing to conduct a proper PREA investigation. Expanding *Bivens* to this type of claim would implicate BOP's policies regarding investigating allegations of staff misconduct and sexual assault and conducting cell searches.

In summary, the Court holds that there are special factors counselling hesitation in applying *Bivens* to First Amendment retaliation and Eighth Amendment conditions of confinement claims as they relate to the investigation of Mr. Fulks's sexual assault allegations and that judicial intervention with the creation these claims is not warranted. Accordingly, these claims are dismissed against all defendants. The Court does not decide whether a *Bivens* remedy is available for Mr. Fulks's excessive force or failure-to-protect claims.

### E. Insufficient Factual Allegations

In addition to the argument that *Abbasi* has foreclosed a damages remedy for most of Mr. Fulks's claims, Lt. Sherman also argues that Mr. Fulks has failed to otherwise state an Eighth

---

[1] *See, e.g.*, *Kadamovas v. Siereveld*, No. 2:18-cv-00490-JRS-MJD, 2019 WL 2869674, at *1-2 (S.D. Ind. July 3, 2019); *Early v. Shepherd*, No. 2:16-cv-00085-JMS-MJD, 2018 WL 4539230, at *13–16 (S.D. Ind. Sept. 21, 2018); *Harris v. Dunbar*, 2:17-cv-00536-WTL-DLP, 2018 WL 3574736, at *2-4 (S.D. Ind. July 25, 2018); *Badley*, 2018 WL 3022653, at *2-4; *Albrechtsen v. Parsons*, 1:17-cv-01665-JMS-TAB, 2018 WL 2100361, at *3-5 (S.D. Ind. May 7, 2018); *Muhammad v. Gehrke*, 2:15-cv-00334-WTL-MJD, 2018 WL 1334936, at *3-4 (S.D. Ind. Mar. 15, 2018).

Amendment claim against him. Pursuant to the Eighth Amendment, prison officials have a duty to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the condition and the substantial risk of harm it posed, but disregarded that risk. *Id.* at 837; *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014). Deliberate indifference in this context is "something akin to recklessness." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint provide a "short and plain statement of the claim showing that the pleader is entitled to relief," which is sufficient to provide the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and quoting Fed. R. Civ. P. 8(a)(2)); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (same).

In his amended complaint, Mr. Fulks alleged that immediately after the assault, he was questioned by Lt. Sherman and Nurse Smith. He asked to be seen by medical due to rectal bleeding and requested a sexual assault exam, but they refused. Dkt. 40 at 24. He also alleged that Lt. Sherman "could plainly see the psychological suffering Fulks was struggling with" while recounting the assault, but insisted on asking him to repeat the details of it. *Id.* at 23. Mr. Fulks said Lt. Sherman's intimidating behavior created suicidal ideation and noted he had a "prior suicide attempt where he actually died but was revived, here at the same unit, years prior." *Id.*

The Court finds that these allegations may constitute deliberate indifference. Mr. Fulks claims he suffered a physically and psychologically traumatic assault, and Lt. Sherman refused to

procure medical assistance for Mr. Fulks. Delaying medical care for non-medical reasons can constitute deliberate indifference. *Perez*, 792 F. 3d at 777.

### IV. Motion for Summary Judgment for Failure to Exhaust Administrative Remedies

The Court now turns to whether Mr. Fulks has exhausted the following claims: (1) Eighth Amendment excessive force claims against Officer Hammon; (2) Eighth Amendment failure-to-protect claims against Officer Johnson and Warden Watson; (3) Eighth Amendment medical claims against Nurse Smith, Lt. Sherman, and Warden Watson for failing to provide physical and psychological care after the assault; and (4) RFRA claims against Warden Watson.

#### A. Standard of Review

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 550 U.S. 372, 380 (2007). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).

#### B. Facts

Consistent with the legal standards set out above, the following facts are undisputed except where noted. *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014).

##### i. BOP Administrative Remedy Procedure

The Bureau of Prisons ("BOP") has promulgated an administrative remedy procedure, codified at 28 C.F.R. sections 542.10, *et seq.*, and BOP Program Statement 1330.18,

14

Administrative Remedy Procedures for Inmates ("P.S. 1330.18"), through which an inmate may seek formal review of a complaint related to any aspect of his imprisonment. 28 C.F.R. § 542.10. This administrative remedy system was in effect at FCC Terre Haute during the entire time that Mr. Fulks has been housed there. Dkt. 48-1 at ¶ 5.

To exhaust his remedies, an inmate must typically begin by filing an informal remedy request through an appropriate institution staff member via a form BP-8. 28 C.F.R. § 542.13; P.S. 1330.18 at 4.

An inmate who is dissatisfied with the result of his attempt at informal resolution may proceed to file a formal Administrative Remedy Request "on the appropriate form (BP-9)" within 20 calendar days of the incident giving rise to the request. 28 C.F.R. § 542.14(a); P.S. 1330.18 at 4. If the inmate is dissatisfied with the Warden's response to his BP-9, he may appeal to the Regional Director by filing a form BP-10 "within 20 calendar days of the date the Warden signed the response" to the BP-9. 28 C.F.R. § 542.15(a); P.S. 1330.18 at 6–7. And if he is dissatisfied with the Regional Director's response to his BP-10, he may take the final step in the remedies process by filing a form BP-11 "within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a); P.S. 1330.18 at 7. At every stage of the process, the inmate is required to use the appropriate form and "place a single complaint or reasonable number of closely related issues on the form." 28 C.F.R. § 542.14(c)(2); P.S. 1330.18 at 5.

Further, the regulations provide that "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

All administrative remedy requests submitted by inmates are logged and tracked in the SENTRY computer database, which is an electronic record keeping system utilized by the BOP.

Dkt. 48-1 at ¶ 6. BP-9s are identified in the SENTRY database by the notation "F1" following the remedy identification number. *Id.* at ¶ 8. BP-10s are identified by the notation "R1" following the remedy identification number. *Id.* BP-11s are identified by the notation "A1" following the remedy identification number. *Id.* If amended or successive filings are submitted at the same level, the numeral following the alphabetical letter will change accordingly. *Id.* Rejected submissions are not considered "filed" and copies are not required to be maintained by the agency unless the submission was deemed "sensitive." *Id.*

If an inmate has filed administrative remedies at all required levels and received a substantive response from the General Counsel, the inmate is deemed to have exhausted the administrative remedies as to the specific issue, or issues, properly raised therein. *See* 28 C.F.R. § 542.15(a) ("Appeal to the General Counsel is the final administrative appeal.").

### ii.     Mr. Fulks's Administrative Remedy History

A full report of Mr. Fulks's administrative remedy requests was run in SENTRY on July 8, 2020. Dkt. 48-1 at ¶ 10; dkt. 48-4. As of that date, Mr. Fulks had submitted a total of approximately 51 administrative remedies, fully exhausting approximately eight of them. Dkt. 48-1 at ¶ 11.

Between September 2018, when Mr. Fulks alleges the assault occurred, and October  22, 2019, when Mr. Fulks initiated this action, Mr. Fulks submitted a total of seven administrative remedies in three different remedies cases—Remedy Case Nos. 954869, 968729, and 969940. *Id.* at ¶ 12. Mr. Fulks exhausted only one of those remedy cases—No. 954869. *Id.*

### Remedy Case No. 954869

On September 24, 2018, Mr. Fulks filed Remedy No. 954869-F1 at the institutional level. Dkt. 48-5 at 1–7. In it, he complained about various medical issues, requested medication, and briefly referenced an "issue that [he has] not brought" up concerning Dr. Wilson. *Id.* at 1–2. The

Acting Complex Warden responded, denying his request. *Id.* at 8. Mr. Fulks then submitted Remedy No. 954869-R1 to the North Central Regional Office, but it was rejected. Dkt. 48-1 at ¶ 13.

Shortly thereafter, Mr. Fulks resubmitted his BP-10 to the Regional Office, where it was assigned Remedy No. 954869-R2. *Id.* at ¶ 13; dkt. 48-5 at 9–10. Mr. Fulks again complained about various medical issues and requested surgery and pain medications, and in the second to last line, he alleged that Dr. Wilson sexually assaulted him. Dkt. 48-5 at 9–10. The Regional Director responded, noting that Fulks had been provided timely and appropriate medical care. *Id.* at 11.

Mr. Fulks submitted a BP-11 to the Central Office, but it was rejected. Dkt. 48-1 ¶ 13. Upon resubmitting his BP-11, the Central Office accepted the remedy and assigned it Remedy No. 954896-A2. *Id.* In this remedy, Mr. Fulks reiterated his medical complaints and requests for surgery and pain medication. Dkt. 48-5 at 12–13. He also recounted in detail for the first time his sexual assault allegations against Dr. Wilson. *Id.* at 13. However, nowhere in this grievance did Mr. Fulks complain about his lack of mental health care after the assault. *See* dkt. 48-5.

The Central Office responded, stating that Mr. Fulks had received appropriate medical care and treatment and indicating that his allegations of staff misconduct would be forwarded to the appropriate office for review. *Id.* at 14–15.

### Unexhausted Remedies in Relevant Period

On February 19, 2019, Mr. Fulks filed Remedy No. 968729-F1 at the institutional level, contending again that he was sexually assaulted by Dr. Wilson and refused a sexual assault exam, drug test, and polygraph and requesting "proper counseling and medical treatment." Dkt. 48-6 at 1−5. In the informal resolution attached to the grievance, Mr. Fulks wrote,

> I have filed 2 complaints for sexual assault against Doctor Wilson and both have gone unanswered. The first one went to SIS and was never seen again and the

second one was picked up by Officer Hammond and it was never seen again. Its obvious that there covering this crime up to protect Dr Wilson and Hammond himself.

Dkt. 48-6 at 3 (errors in original). Lt. Sherman responded,

The PREA allegation was thoroughly investigated. PREA Protocols was initiated from the first administrative remedy. There is no need for a second admin remedy related to the PREA allegation against Dr. Wilson unless it's a separate incident. Inmate Fulks signed a PREA notification form at the end of the last investigation notifying him the allegation was determined unsubstantiated.

*Id.* at 5.

Mr. Fulks testified that he read Lt. Sherman's response and interpreted it to mean "that there was no need for a subsequent remedy because they had already conducted a PREA investigation." Dkt. 83 at ¶ 5. However, Mr. Fulks moved to the next step by filing a BP-9 to the Warden on February 19, 2021. Dkt. 48-6 at 1.

There was a delay in processing due to the administrative remedy clerk's leave and training, so the Warden did not respond until December 13, 2019, nearly two months after Mr. Fulks initiated this action. Dkt. 48-1 at ¶ 14; dkt. 48-6 at 6; dkt. 1. Mr. Fulks did not appeal this response to the Regional Director or attempt any more submissions related to this remedy case. Dkt. 48-1 at ¶ 14.

At the end of February 2019, Mr. Fulks submitted Remedy No. 969940-F1 at the institutional level, but it was rejected. Dkt. 48-1 at ¶ 15; dkt. 48-4 at 19. The abstract on SENTRY indicated that the remedy was about "staff complaints/threat to outside person." Dkt. 48-4 at 19. Mr. Fulks did not appeal this rejection to the Regional Director or attempt any more submissions related to this remedy case. Dkt. 48-1 at ¶ 15.

### Mr. Fulks's Other Attempts

Mr. Fulks testified that he "attempted to submit grievances related to the retaliation by

Lieutenant Sherman and others on a number of occasions. These issues were either lost or I was told that the issue was non-grievable." Dkt. 83 at ¶ 2. He said he would have persisted in filing more grievances, but believed the process was unavailable to him because of the fact that the grievances were lost, he was told the issue was non-grievable, or there was no need for an additional remedy because the issued had been addressed. *Id.* at ¶ 6. He noted that one of the reasons he stopped trying to submit grievances was because each attempt cost money for copies, "so the need to submit multiple grievances every time they lose or ignore [his] forms becomes expensive for an indigent inmate." *Id.*

Mr. Fulks included an example of a BP-8 that he alleges he attempted to submit. *Id.* at ¶ 2; dkt. 83-1. In the grievance, Mr. Fulks wrote that he was uncomfortable with the strip searches, shakedowns, and confiscation of his property, and that Lt. Sherman told him that these searches would stop if Mr. Fulks stopped "pushing the issue" with respect to the assault. Dkt. 83-1 at 2. He also alleged that BOP staff allowed Officer Hammon to throw him down the stairs, that Officer Johnson labeled him a snitch, and that officers have conducted strip searches for the purpose of humiliating him after he tried to report the sexual assault. *Id.* at 3. At the bottom of the first page is the handwritten annotation, "This is not a grievable issue." *Id.* at 2.

The defendants dispute the authenticity of this grievance. Andrew Sutton, a correctional counselor assigned to the SCU, was responsible for issuing BP-8s to SCU inmates, processing their submitted BP-8s, and responding to them as appropriate. Dkt. 86-1 at ¶¶ 1–2. In September 2018, he and Cory Shepherd were the unit team members assigned to the SCU. *Id.* at ¶ 5. Mr. Sutton believes that Mr. Shepherd issued the BP-8 to Mr. Fulks on September 11, 2018, based on the initials at the bottom of the form. *Id.* If Mr. Fulks had returned the BP-8, either Mr. Sutton or Mr. Shepherd would have recorded the date that the BP-8 was returned and initialed the form.

19

*Id.* at ¶ 6. But those areas were left blank. *Id.*; dkt. 83-1 at 2.

Mr. Sutton also maintains a log of all BP-8s that he processes and numbers each BP-8 in the top left corner that corresponds to the log. Dkt. 86-1 at ¶ 7. The BP-8 submitted to the Court by Mr. Fulks does not contain any numbering, nor was it included in Mr. Sutton's log. *Id.*

The handwritten response saying that the issue was not grievable was not written in Mr. Sutton's handwriting, nor did Mr. Sutton ever respond to a grievance in that way. *Id.* at ¶ 8. Mr. Sutton does not recognize the handwriting as belonging to Case Manager Shepherd, either. *Id.*

The only date on this form is the September 11, 2018, date at the bottom of the form from when it was issued to Mr. Fulks. Dkt. 83-1 at 2. It appears as if someone whited out a date near the top of the form next to where it says "Date Submitted:" *Id.*

## C. Discussion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516, 524–25 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532 (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (footnote omitted); *see also Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) ("'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's

administrative rules require.'") (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).

Because exhaustion of administrative remedies is an affirmative defense, the burden of proof is on the defendants to demonstrate that Mr. Fulks failed to exhaust all available administrative remedies before he filed this suit. *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). "[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (internal quotation omitted). An administrative procedure is unavailable when (1) the process operates as a "simple dead end," (2) when it is so opaque that it is incapable of use, or (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859–60.

Mr. Fulks's RFRA claim that Warden Watson forbade Mr. Fulks's spiritual advisor from visiting him is unexhausted. Mr. Fulks does not mention not being able to visit with his spiritual advisor in any of the grievances (exhausted or not), and he does not allege in his affidavit that this was one of the topics he attempted to address in the grievance process. Dkt. 83. Accordingly, the RFRA claim against Warden Watson is **dismissed** without prejudice.

With respect to Remedy No. 954869, the defendants argue that the only claims that this grievance exhausted are Eighth Amendment claims against Warden Watson in relation to his back injury and chronic pain treatment and the sexual assault itself. The Court agrees. This grievance does not address the excessive force claims against Officer Hammon, the failure to protect claims against Warden Watson and Officer Johnson, or the lack of mental healthcare or medical care after he was allegedly pushed down the stairs.

Mr. Fulks did request mental health care in Remedy No. 968729-F1 on February 19, 2019. Dkt. 48-6 at 1 ("I need proper counseling and medical treatment and medication."). Lt. Sherman responded that Mr. Fulks did not need to file "a second admin remedy related to the PREA Allegation against Dr. Wilson unless it's a separate incident."[2] Dkt. 48-6 at 5. Mr. Fulks argues that Lt. Sherman's response excused him from proceeding further with this remedy, but the fact is Mr. Fulks *did* proceed further by filing the BP-9 with the Warden. Dkt. 48-6 at 1. The Warden did not respond to the grievance until December 13, 2019, after Mr. Fulks filed this lawsuit, meaning any subsequent action on Mr. Fulks's part would have been futile for exhaustion purposes. *See Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004) ("Ford's real problem . . . is timing. Section 1997e(a) says that exhaustion must precede litigation. 'No action shall be brought' until exhaustion has been completed."). But the regulations also provide that the Warden should have responded within 20 days (with an additional 20 if more time was needed), and if no response is received within the time allotted for reply, it should be considered a denial at that level. 28 C.F.R. § 542.18. Mr. Fulks admitted that he was aware of this provision in his amended complaint. *See* dkt. 40 at 14 (in which Mr. Fulks alleges that, after he filed three BP-9s with no timely response from the Warden, he deemed those remedies denied and "move[d] forward in filing to the next level over [the Warden] to Regional.").

In *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020), the Seventh Circuit held that the "prison's confusing responses" and failure to timely resolve an inmate's standard grievance rendered the grievance process unavailable. That court stated, "[a]n administrative scheme can be 'unavailable' to a prisoner when a prison fails to response to a prisoner's grievance and, in doing so,

---

[2] The Court rejects the defendants' argument that Mr. Fulks should only have relied on Lt. Sherman's response insofar as it pertained to the sexual assault allegation itself and nothing more. Dkt. 86 at 14–15. Inmates should not be charged with deducing what part of their grievance has been responded to. A response is a response.

prevents that prisoner from exhausting administrative remedies." *Id.* (citing *Dole*, 438 F.3d at 809). The Warden's lack of response may have reinforced Lt. Sherman's message to Mr. Fulks that the issues addressed in this grievance were duplicative of a prior grievance, making the process "so opaque that it becomes, practically speaking, incapable of use." *Ross*, 136 S. Ct. at 1859. Accordingly, material questions of fact exist as to the availability of the grievance process for Remedy Number 968729-F1.

Mr. Fulks's purported informal resolution includes his allegations that Officer Hammon pushed him down a flight of stairs and that Officer Johnson put him in danger and failed to protect him by labeling him a snitch. Dkt. 83-1. The defendants' observation that the resolution "reeks of illegitimacy," dkt. 86 at 16, is not without support. Officer Sutton did not recognize the handwriting as his or the other officer on the unit, and he found the response to be unlike a response any officer would provide to a grievance. And while the date on the top of the form may have been whited out, it is also possible that too many passes through a copier have resulted in discolored parts of the form. In short, the Court agrees with the defendants that there are material issues of fact with respect to the informal resolution that must be resolved at a hearing pursuant to *Pavey v. Conley*, 544 F. 3d 739, 742 (7th Cir. 2008).

The defendants also argue that, even assuming Mr. Fulks's grievances were being purposely lost or improperly rejected, the process was not unavailable to Mr. Fulks because he should have, but did not, submit a "sensitive" remedy request. The applicable section of the grievance policy provides, "if an inmate reasonably believes the issue is sensitive and his safety or well-being would be placed in danger if the request became known at the institution, he may submit the request directly to the appropriate Regional Director." 28 C.F.R. § 542.14(d)(1). However, Mr. Fulks's request was "known at the institution." His allegation is that the defendants purposely lost the

grievances, advised him that the procedure was unavailable, or advised him that he did not need to file a repetitive grievance, *not* that the defendants' actions made him too fearful to attempt to use the regular process.

Finally, the defendants argue that certain defendants were not named in the grievances. But "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) *see also Wilder v. Sutton*, 310 Fed. Appx. 10, 15, 2009 WL 330531, *4 (7th Cir. 2009) ("prisoners must only put responsible persons on notice about the conditions about which they are complaining"). Because the grievances at issue addressed Mr. Fulks's lack of medical care after the assault, failure to protect, and excessive force claims, the Court will not dismiss at this time any particular defendant alleged to have committed these violations.

Accordingly, of the claims not dismissed in Section III, the only claim that was clearly not exhausted was Mr. Fulks's RFRA claim against Warden Watson. Whether Mr. Fulks resolved his claims concerning (1) Eighth Amendment excessive force claims against Officer Hammon; (2) Eighth Amendment failure-to-protect claims against Officer Johnson and Warden Watson; and (3) Eighth Amendment medical claims against Nurse Smith, Lt. Sherman, and Warden Watson for failing to provide physical and psychological care after the assault will be resolved at a *Pavey* hearing.

### V. Conclusion

For the foregoing reasons, the defendants' motion to dismiss for failure to state a claim, or, in the alternative, motion for summary judgment (exhaustion of administrative remedies), dkt. [48], is **granted in part and denied in part**. Mr. Fulks's First Amendment retaliation claims

and Eighth Amendment conspiracy claims are dismissed for failure to state a claim in light of

*Ziglar v. Abbasi*. Mr. Fulks's RFRA claims are dismissed as unexhausted.

Mr. Fulks's Eighth Amendment claims against Dr. Wilson concerning the alleged sexual

assault and failure to provide adequate medical care for his chronic back pain are exhausted and

shall proceed. There are material issues of fact with respect to whether Mr. Fulks has exhausted

his other claims; that will be resolved at a *Pavey* hearing. A separate order will issue to schedule

the hearing.

**SO ORDERED.**

Date: 3/31/2021

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

CHADRICK E. FULKS
16617-074
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Rachana Nagin Fischer
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
rachana.fischer@usdoj.gov

Jessica M. Lindemann
BARNES & THORNBURG, LLP (Indianapolis)
jessica.lindemann@btlaw.com

Gina M. Shields
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
Gina.Shields@usdoj.gov